2021 IL App (1st) 200181-U

FIFTH DIVISION
JUNE 30, 2021

No. 1-20-0181

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ALEJANDRO QUIROZ, an Administrator of the Estate of Ricardo Quiroz, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18 L 10344 |
| CHICAGO TRANSIT AUTHORITY, a municipal corporation, | ) ) ) | Honorable Brendan A. O'Brien, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order dismissing the plaintiff's complaint is reversed based on the plaintiff's cause of action being sufficiently pled to survive a section 2-615 motion to dismiss.

¶ 2    The plaintiff-appellant, Alejandro Quiroz, as administrator of the estate of Ricardo Quiroz, deceased, brought a wrongful death action against the Chicago Transit Authority (CTA) in the circuit court of Cook County. The circuit court dismissed Mr. Quiroz's complaint on the basis that the CTA owed no duty of care to the decedent. Mr. Quiroz now appeals. For the following reasons,

we reverse the judgment of the circuit court of Cook County and remand the case for further proceedings consistent with this order.

¶ 3                                     BACKGROUND

¶ 4     The plaintiff's original pleadings and his subsequent amendments established the following facts. On April 15, 2018, at approximately 3:43 a.m., the decedent, Ricardo Quiroz,[1] entered a CTA train tunnel between the Grand Avenue and Chicago Avenue stations on the red line. He walked along the catwalk inside the train tunnel and eventually climbed into a recessed area of the tunnel wall. Ricardo remained inside the recessed wall pocket for two and a half hours, but then he fell out. He landed between the catwalk and the train tracks. Ricardo continued to lay on the ground, parallel to the tracks.

¶ 5     Two trains passed by Ricardo without incident. However, he apparently moved his body and placed his hand on the rail. When the next train passed by, it struck Ricardo, and his body became entangled with the train. The train dragged Ricardo to a different spot inside the tunnel. Seven more trains passed through the tunnel. Then a train conductor noticed something on the track, which he thought was garbage. After stopping the train at the station, the train operator walked back into the tunnel with a flashlight and discovered Ricardo's body.

¶ 6     On September 24, 2018, Mr. Quiroz filed a wrongful death complaint against the CTA, alleging that the CTA's negligence caused Ricardo's death. The CTA filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)) on the basis that it owed no duty to Ricardo, a trespasser, from the open and obvious danger of trains moving inside a train tunnel. The trial court granted the CTA's motion and

---

[1]Since the decedent shares the same last name as the plaintiff, Mr. Quiroz, we will refer to the decedent by his first name, Ricardo.

dismissed Mr. Quiroz's complaint without prejudice, allowing him the opportunity to amend it. The trial court further ordered the CTA to produce any surveillance video footage of the incident to Mr. Quiroz.

¶ 7    Thereafter, Mr. Quiroz filed his first amended complaint. The first amended complaint alleged that the CTA "knew that persons were in the subway tunnel from time to time because of graffiti on the walls and debris on the ground in the tunnels." Mr. Quiroz further alleged that, "on information and belief, that [train] operators would have been able to see [Ricardo] lying on the ground near the tracks in a position of peril." He therefore argued that the CTA owed Ricardo a duty of care. In response, the CTA filed a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2–619 (West 2018)), again arguing that it did not owe Ricardo a duty of care because not only was he a trespasser, but the moving trains were an open and obvious danger. The CTA's motion additionally argued that there was no evidence that Ricardo was *discovered* by CTA personnel prior to his death. The motion attached an affidavit from James Higgins, an employee in the CTA Security Investigations Department, which stated that the CTA's security cameras are "not monitored on a 24-hour basis" but instead are used "as a responsive investigatory tool" and are retrieved only "post-event."

¶ 8    Following a hearing, the trial court granted the CTA's motion and dismissed Mr. Quiroz's first amended complaint without prejudice. The trial court noted in its ruling that Mr. Quiroz's pleading that Ricardo was *discovered* by the CTA prior to his death was made "in a conclusory manner." The court's ruling provided Mr. Quiroz an opportunity to again amend his pleading.

¶ 9    Mr. Quiroz then filed a second amended complaint, which is the subject of this appeal. The second amended complaint alleged five counts: count I, "Wrongful Death - Discovered Trespasser"; count II, "Survival - Discovered Trespasser"; count III, "Willful and Wanton

Misconduct/Wrongful Death"; count IV, "Willful and Wanton Conduct/Survival"; and count V, spoliation. The second amended complaint primarily alleged that the CTA train operators who drove the trains past Ricardo before he was struck, as well as the security personnel who monitored the security cameras which showed the inside of the tunnel, *saw Ricardo* but failed to stop the trains or notify other CTA personnel. Specifically, the second amended complaint alleged that Ricardo fell "in a lighted area" and was "injured, unable to remove himself from the tracks, and was obviously and clearly in a position of peril" and that he "was clearly visible to the two operators of the train[s] which passed over [Ricardo] as he lay on the tracks." It further alleged that "there were in operation certain security cameras in the area where [Ricardo] had fallen" and that he "was clearly visible in said cameras." Mr. Quiroz averred that this negligence by the CTA caused Ricardo's death because "after two or more CTA trains passed over [Ricardo], another southbound CTA [r]ed [l]ine train collided with [Ricardo], thereby causing him injury which ultimately caused [Ricardo's] death." The second amended complaint alleged, in the alternative, that the train operators and security personnel did not see Ricardo because they were not properly monitoring the train tracks while operating the trains. The spoliation count alleged that the CTA had failed to produce the surveillance video footage.

¶ 10    The CTA filed a motion to dismiss the second amended complaint pursuant to section 2-615 of the Code.[2] The CTA's motion to dismiss argued that Mr. Quiroz's second amended complaint failed to plead that the CTA owed a duty to protect Ricardo, a trespasser, from the open and obvious danger of moving trains or that it engaged in willful and wanton conduct. The motion argued that the second amended complaint pled speculative, conclusory statements without factual

---

[2]The CTA also filed a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), which the trial court denied, and which is not at issue in this appeal.

support. Additionally, regarding Mr. Quiroz's spoliation claim, the motion pointed out that the CTA had produced the surveillance video footage to Mr. Quiroz prior to him amending his complaint, which he relied upon in alleging specific facts in the second amended complaint, such as Ricardo falling and becoming stuck on the tracks as he was visible to the train operators and security cameras.

¶ 11    In response, Mr. Quiroz claimed that the CTA owed a duty to Ricardo because he was a discovered trespasser who was "clearly visible" and in "obvious peril." Mr. Quiroz again claimed that the CTA train operators and security personnel either saw Ricardo on the train tracks and ignored him or engaged in conduct which prevented them from seeing him.

¶ 12    Following a hearing on September 18, 2019, the trial court granted the CTA's motion and dismissed the second amended complaint with prejudice. Citing to section 337 of the Restatement of Torts (Restatement (Second) of Torts § 337 (1965)), the trial court noted that before a duty can be imposed on landowners as to trespassers, it must be established that the landowner has reason to believe that a trespasser would not realize the risk of the condition in which he was placing himself. The trial court emphasized that it has been well established that trains and train tracks are open and obvious dangers, especially in a location such as off the station platforms and inside the train tunnel where Ricardo placed himself. The trial court stated that it did not know how Mr. Quiroz could overcome the open and obvious danger presented by the condition and situation in which Ricardo placed himself. The court did not believe that discovery or further amending the pleadings could cure the defect. The trial court further found that Mr. Quiroz could not circumvent the duty element necessary to maintain his cause of action, regardless of any "hypotheticals" that the train operators saw Ricardo or were not paying enough attention to see him.

¶ 13    Mr. Quiroz moved for reconsideration, which the trial court denied. The trial court again

noted that Ricardo was a trespasser and that the moving trains were an open and obvious danger. The trial court stated: "I don't know what you can plead to fix that." The trial court then told Mr. Quiroz that the duty he was seeking to impose on the CTA by having it "always be on the lookout for someone being in an area where they're not supposed to be" would be a "huge responsibility" and a "huge undertaking." This appeal followed.

¶ 14                                          ANALYSIS

¶ 15    We note that we have jurisdiction to consider this matter, as Mr. Quiroz filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 16    Mr. Quiroz presents the following sole issue: whether the trial court erred in dismissing his second amended complaint pursuant to section 2-615 of the Code. Mr. Quiroz argues that his second amended complaint sufficiently pled that Ricardo was a trespasser who was discovered in a place of danger, and so he was owed a duty of care by the CTA to stop the trains and remove him from the train tracks. He argues that in the alternative, he adequately pled that the CTA engaged in willful and wanton conduct. He claims that further discovery is needed to determine the behavior of CTA personnel which would support his allegations and therefore, the trial court should not have dismissed the case at the pleadings stage.

¶ 17    As an initial matter, we will consider Mr. Quiroz's motion to this court to strike the CTA's brief within the context of resolution of the case as a whole. In his motion, Mr. Quiroz requests that this court strike the portions of the CTA's brief which include facts outside the pleadings, in particular, descriptions of the surveillance video footage from the incident. Interestingly, Mr. Quiroz's motion itself cites to newspaper stories about unrelated cases, which are also outside the pleadings. It is well established that when this court reviews a motion to dismiss pursuant to section 2-615, our review is limited to the face of the pleadings, *matters of which the court can take judicial*

*notice*, and judicial admissions in the record. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 18; *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 52. Accordingly, we will not deviate from that standard and therefore deny Mr. Quiroz's motion to strike portions of the CTA's brief.

¶ 18    Turning to the merits of the appeal, a motion to dismiss brought pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint by alleging defects on its face. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 735 (2009). While a plaintiff is not required to prove his case at the pleading stage, he must allege sufficient facts to state all the elements which are necessary to sustain the cause of action. *Visvardis v. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007). A trial court should dismiss a complaint under section 2-615 only if it is readily apparent from the pleadings that there is no possible set of facts that would entitle the plaintiff to the requested relief. *Quinn v. Board of Education of the City of Chicago*, 2018 IL App (1st) 170834, ¶ 57. "In reviewing the sufficiency of a complaint, a court must accept *as true* all well-pleaded facts and all reasonable inferences that may be drawn from those facts." (Emphasis added.) *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). Additionally, the complaint's allegations must be construed in the light most favorable to the plaintiff. *Id*. We review *de novo*, the trial court's dismissal of a complaint pursuant to section 2-615. *Wagner*, 391 Ill. App. 3d at 735.

¶ 19    The CTA's motion to dismiss in this case was based on the argument that it did not owe a duty to Ricardo, a trespasser who placed himself near an open and obviously dangerous condition. In a negligence action, the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach. *Smith v. The Purple Frog, Inc.*, 2019 IL App (3d) 180132, ¶ 11.

¶ 20    In this case, it is undisputed that Ricardo was a trespasser. See *Cockrell v. Koppers*

*Industries, Inc.*, 281 Ill. App. 3d 1099, 1104 (1996) (if an invitee deviates from the accustomed way or goes to a place other than that place covered by the invitation, he becomes a trespasser). Section 337 of the Restatement, entitled "Artificial Conditions Highly Dangerous to Known Trespassers," provides the duty owed to trespassers by landowners:

"A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if

(a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and

(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved." Restatement (Second) of Torts § 337 (1965).

¶ 21    Our analysis turns on Mr. Quiroz's allegation that Ricardo was a *discovered* trespasser in a position of peril which he either did not realize or could not discover. Specifically, as outlined in subsection (a) of section 337, that the CTA knew or had reason to know of Ricardo's presence in the tunnel, and as outlined in subsection (b) of section 337, that Ricardo either did not or could not recognize the danger and remove himself from harm. In *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 446 (1992), our supreme court made clear that a landowner must use ordinary care to avoid injury to a trespasser who has been *discovered in a place of danger*. Mr. Quiroz's second amended complaint specifically alleged that the CTA *discovered* Ricardo in a place of danger. The second amended complaint alleged: that Ricardo was "injured, unable to remove himself from the tracks, and was obviously and clearly in a position of peril," that he was "clearly visible" to the train

operators and security cameras "as he lay on the tracks," and that the CTA's failure to remove him from the tracks caused his injuries and death. In other words, the second amended complaint invited the inference that the train operators saw Ricardo but nevertheless did not stop the trains.

¶ 22 No matter how incredulous or far-fetched these allegations and the material inferences that flow from them may seem, once well-pleaded, we must accept them as true under Illinois law pursuant to section 2-615 of the Code. See *Henderson Square Condo Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 78 (when ruling on a section 2–615 motion to dismiss, a court must accept *as true*, all well-pleaded facts, as well as any reasonable inferences that may arise from them). This is particularly so considering that we must interpret the allegations of the second amended complaint in the light most favorable to Mr. Quiroz. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996).

¶ 23 Guided in our analysis by *Lee*, we focus on Mr. Quiroz's allegations that Ricardo was "clearly visible" to the train operators and security cameras, and that he was "injured, [and] unable to remove himself from the tracks." Under these facts, accepted as true (as we must at this stage in the proceedings), the CTA had a duty, pursuant to section 337 of the Restatement, to exercise reasonable care to prevent injury to Ricardo since the second amended complaint alleged that he was unable to remove himself from danger. See *Lee*, 152 Ill. 2d at 448 (adopting Restatement (Second) of Torts § 337 (1965)). On that assertion, Mr. Quiroz placed his pleadings within the parameters of section 337 of the Restatement and our supreme court's reasoning in *Lee*. Accordingly, we reverse the trial court's judgment and remand the case to the trial court for further proceedings.

¶ 24 We emphasize that we make no judgment as to the truth of Mr. Quiroz's allegations or his ability to establish them as true in further proceedings upon remand, specifically, the allegations

that Ricardo was discovered in a position of peril and unable to remove himself, yet the train operators continued to operate the trains anyway, ultimately causing his death. Rather, our ruling recognizes that, *at this stage in the proceedings*, Mr. Quiroz's second amended complaint met the threshold to survive a section 2-615 motion to dismiss on the basis that he pled that the CTA *discovered* Ricardo in a position of peril and unable to either appreciate the danger or remove himself from it. In short, since the CTA chose to attack Mr. Quiroz's second amended complaint pursuant to section 2-615, the trial court erred in dismissing the complaint with prejudice at this stage of the proceedings.

¶ 25                                    CONCLUSION

¶ 26    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the case for further proceedings.

¶ 27    Reversed and remanded.